**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

MARCH 28, 2007

U.S. BANKRUPTCY COURT
       NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY
```

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No.:  05-60442 (DHS) |
| **NJ AFFORDABLE HOMES CORP.**, | Adv. No.:  06-01656 (DHS) |
| Debtor. | Judge:  Donald H. Steckroth, U.S.B.J |
| **HERMAN GROSS, QUALITY HOMES DEVELOPMENT CORP. AND H&W PROPERTIES, INC.**, | |
| Plaintiffs, | |
| v. | |
| **CHARLES M. FORMAN, TRUSTEE FOR NJ AFFORDABLE HOMES CORP.**, | |
| Defendant. | |

**OPINION**

**APPEARANCES:**

Cole, Schotz, Meisel, Forman & Leonard, PA
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07602
***Special Counsel for Charles M. Forman, Chapter 7 Trustee***

Berkowitz, Lichtstein, Kuritsky, Giasullo & Gross, LLC
John C. Messina, Esq.
443 Northfield Avenue
West Orange, New Jersey 07052
***Co-Counsel for Plaintiffs Herman Gross, Quality Homes
Development Corp. and H&W Properties, Inc.***

Norris, McLaughlin & Marcus, PA
Bruce J. Wisotsky, Esq.
721 Route 202-206 North
Bridgewater, New Jersey 08807
***Co-Counsel for Plaintiffs Herman Gross, Quality Homes
Development Corp. and H&W Properties, Inc.***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Charles Forman, as Chapter 7 Trustee for NJ Affordable Homes Corp. (hereinafter "Trustee"), filed a motion to dismiss the instant adversary proceeding under Federal Rules of Civil Procedure 12(b)(6) and (7) made applicable here pursuant to Federal Rule of Bankruptcy Procedure 7012, as well as in the interest of judicial economy.

On or about April 11, 2006, Plaintiffs Herman Gross, Quality Homes Development Corp. (hereinafter "Quality Homes") and H&W Properties, Inc. (hereinafter "H&W") filed the instant Adversary Complaint against the Trustee within NJ Affordable Homes Corp.'s global Chapter 7 proceeding (hereinafter "Debtor" or "NJAH"). The two-count Complaint seeks: (i) a determination that the Plaintiffs have legal or equitable ownership, or both, of the twenty-four (24) properties listed in Schedule A of the Complaint; (ii) that the Trustee has no authority to sell the properties because they do not constitute part of the Debtor's bankruptcy estate; (iii) that the mortgages entered into by Herman Gross constitute valid first-priority mortgage liens; and (iv) related relief. (*Complaint*, pp. 7-9).

For the reasons that follow, this Court: (i) holds that the Trustee maintains at least an equitable interest in the properties at issue, making them part of the bankruptcy estate; (ii) hereby dismisses, without prejudice, the Adversary Complaint as it relates to nineteen (19) properties allegedly owned by H&W and the 42 22nd Street, Irvington, New Jersey property purportedly owned by Quality Homes Development Corp. so that claims against these properties can be addressed in adversary complaints brought by the Trustee on a property-specific basis; (iii) denies dismissal of the Adversary Complaint with regard to the remaining four (4) properties owned by Herman Gross or Quality Homes, or both; and (iv) directs that an amended complaint be filed within

twenty (20) days, incorporating these holdings and joining all indispensable parties as set forth herein.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. As this Adversary Complaint involves administration of the Debtor's estate as well as determinations as to the validity, extent and priority of liens, and affects the liquidation of the assets of estate, the complaint is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

On a motion to dismiss, this Court must assume the truth of the factual allegations set forth in the Complaint, which are as follows.

On September 12, 2005, the Securities and Exchange Commission (hereinafter "SEC") filed a verified complaint against the Debtor and Wayne Puff in the United States District Court for the District of New Jersey, Civ. No. 05-4403. (*Complaint*, p. 3). Contemporaneously, the SEC sought temporary restraints against the Debtor and Wayne Puff, for which the District Court entered an Order to Show Cause, a Temporary Restraining Order, and an Order Freezing Assets and Granting Related Relief. (*Id.* at 4.) On September 26, 2005, the District Court entered an Order Granting Preliminary Injunction and Other Relief (hereinafter "PIO") with the consent of Wayne Puff and NJAH. On October 3 and October 5, 2005, the District Court entered Orders that modified the PIO by expanding the restraints imposed. The purpose of the PIO, as amended, was to preserve the assets of NJAH, Wayne Puff, and their affiliated entities or persons, as well as to enjoin the sale, encumbrance, transfer, or disposition of those assets. The PIO also provided for the appointment of The Honorable Nicholas H. Politan as Receiver ("Receiver") and permitted the Receiver to

4

deposit checks derived from property interests, make necessary payments, as well as serve the PIO on all parties in interest.

On November 22, 2005, the Receiver filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on behalf of the Debtor. On November 23, 2005, Charles Forman was appointed to serve as Chapter 7 Trustee for the Debtor. On the same day, the District Court withdrew the reference of the global proceeding from the Bankruptcy Court, and placed the case upon the District Court docket. On December 6, 2005, the District Court again referred the case to the Bankruptcy Court and granted the Trustee power to implement an expedited sales process to liquidate the property and assets of NJAH.

On or about January 12, 2006, the Trustee filed a motion seeking authority to sell three hundred ninety (390) properties titled under the names of NJAH or its investors, free and clear of all liens, pursuant to Section 363 of the Bankruptcy Code. On or about April 17, 2006, this Court entered an Order authorizing the Trustee to sell one hundred forty-two (142) properties (hereinafter "First Sale Order"). On June 29, 2006, this Court entered an Order granting the Trustee's sale motion and authorizing sale of the remaining two hundred forty-eight (248) properties (hereinafter "Second Sale Order").

On July 7, 2006, the Plaintiffs filed, *inter alia*, a notice of appeal to the District Court from this Court's Second Sale Order. In an oral opinion dated October 18, 2006, The Honorable Jose L. Linares of the District Court for the District of New Jersey noted that the Plaintiffs' appeal had been withdrawn. However, pursuant to the same opinion, certain institutional lenders received a stay pending appeal in regard to their interest in 261 Seneca Place, Westfield, New Jersey (hereinafter "Seneca Place Property"). On September 30 and 31, 2006, and October 1, 2006, the Trustee

conducted an auction sale of the properties subject to the First Sale Order. On October 10 and 13, 2006, this Court entered final orders approving the sale of those properties.

H&W is a New Jersey corporation, formed as a joint venture between Wayne Puff and Herman Gross. (*Id.* at 2). Mr. Gross provided all of the capital for H&W and is authorized to act on its behalf. (*Id.*). Herman Gross invested over $11.8 million dollars with the Debtor, making him one of the largest single, non-institutional investors in the Debtor. (*Id.* at 3). Quality Homes is a New Jersey corporation that was organized to acquire, rehabilitate and sell property in Irvington, New Jersey. (*Id.* at 2). Mr. Gross is the sole shareholder and provided all of the capital for Quality Homes. (*Id.*). At all relevant times, Wayne Puff was an officer of the Debtor and constituted either its sole or majority shareholder. (*Id.* at 3).

Herman Gross is the sole owner of properties located as 161-163 Dennison Road, Gardiner, New York (hereinafter "Dennison Road Property") and the Seneca Place Property. (*Id.* at 4). Mr. Gross has made all expenditures with regard to these properties. (*Id.*). On October 28, 2004, about eleven (11) months prior to commencement of the SEC action, Herman Gross purchased the Dennison Road Property for $2,000,000 from Quality Homes for the purpose of subdivision. (*Id.* at 5). In late 2005, Mr. Gross learned that the Town of Gardiner was considering a construction moratorium. (*Id.*). After discovering that the property deed had not been properly recorded, Mr. Gross notified the Trustee that he would seek to record and apply for a subdivision of the property in order to avoid the moratorium. (*Id.*). Mr. Gross received no response to his telephone and letter communications. (*Id.*). He followed through on his intention and filed the Dennison Road Property deed on December 21, 2005, along with an application for subdivision. (*Id.*). Mr. Gross has made expenditures of $49,555.54 to maintain and improve the Dennison Road Property since its purchase.

(*Id.*). The deed for the Seneca Place Property was recorded on October 15, 2004, eleven (11) months prior to the SEC action. (*Id.*). Since its purchase, Mr. Gross has made expenditures of $46,555.46 to maintain and improve the Seneca Place Property. (*Id.* at 5-6).

In addition, Herman Gross is the "owner" of Quality Homes and provided 100% of the capital used by Quality Homes to purchase the properties in its name. (*Id.* at 6). The two properties owned by Quality Homes and relevant to this motion are located at 73 Ellis Avenue, and 180 Ellis Avenue, in Irvington, New Jersey (hereinafter "Ellis Properties"). (*Id.*).

H&W is the legal or equitable owner, or both, of nineteen (19) parcels of real property that were purchased solely with funds provided by Herman Gross (hereinafter "The H&W Properties"). (*Id.*). The Debtor fraudulently represented to H&W and Mr. Gross that deeds for The H&W Properties would be properly recorded. (*Id.*). In order to purchase the properties, Mr. Gross provided the necessary funds to H&W, including all of its operational capital. (*Id.*). H&W then used this funding to purchase properties. (*Id.*).

The Trustee first argues that the Adversary Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7), due to Plaintiffs' failure to join necessary parties as required by Federal Rule of Civil Procedure 19. Specifically, the Trustee notes the Plaintiffs' failure to join the nominal title holders of each property. (*Application in Support of Motion of Charles M. Forman, Chapter 7 Trustee, to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(7) and 12(b)(6), and in the Interest of Judicial Economy*, p. 16). Second, the Trustee argues that the Complaint should be dismissed on grounds of judicial economy. The gravamen of this argument is that the Trustee's filing of over two hundred fifty (250) adversary complaints on a property basis is a more efficient method of resolving the global proceeding. (*Id.* at 19). Lastly, the Trustee argues

that pursuant to this Court's Opinion on the Second Sale Order, the portion of the Complaint seeking a determination that the properties at issue are not part of the bankruptcy estate fails to state a claim upon which relief can be granted. (*Id.* at 20).

In reply, the Plaintiffs argue that the Complaint should not be dismissed for failure to join a necessary party, because all necessary parties are already joined in the instant adversary proceeding. (*Opposition to Motion of Charles M. Forman, Chapter 7 Trustee, to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(7) and 12(b)(6), and in the Interest of Judicial Economy*, p. 9). Plaintiffs assert that they are the actual owners of the properties, with each property independently owned by Herman Gross, directly or indirectly. (*Id.*). As such, there are no additional nominal title holders subject to joinder. (*Id.*).

Second, the Plaintiffs argue that the Trustee's points on judicial efficiency are irrelevant because the two properties held solely by Mr. Gross are not the subject of an outstanding adversary complaint which puts them in issue and the complaints involving the Ellis Properties owned solely by Quality Homes have been dismissed by the Trustee. (*Id.* at 10). Thus, this adversary proceeding is the only medium to resolve these disputes. (*Id.*). Even if relevant, the Plaintiffs assert that the Trustee should not be able to dictate the manner in which disputes should be resolved. (*Id.*). However, the Court notes that on October 23, 2006, two adversary complaints were filed by the Trustee, which seek to resolve the disputes of all interested parties as to the two properties owned directly by Herman Gross. In addition, the Court notes that all other adversary complaints filed by persons other than the Trustee in this bankruptcy have been voluntarily dismissed.

By way of response, the Trustee alleges that Plaintiffs are the record owners of only four (4) of the properties at issue in the Adversary Complaint. (*Letter Brief in Reply to the Plaintiffs'*

8

*Opposition to the Trustee's Motion to Dismiss the Adversary Complaint*, p. 1 n.1). The Trustee also claims that the Plaintiffs asserted the same arguments in a previous cross-motion, which was denied. (*Id.* at 2). In addition, the Plaintiffs are parties to the pending appeal of this Court's Second Sale Order. (*Id.*). Therefore, the Trustee asks that the Plaintiffs not be permitted to reargue their point by virtue of the filing of a Complaint. (*Id.*). Finally, the Trustee's adversary complaint involving the Dennison Road Property, Adv. No. 06-02843, includes claims relevant to Mr. Gross's alleged willful violation of the District Court's Orders and the automatic stay by recording a deed and submitting a subdivision application as to that property. (*Id.* at 3-4).

At oral argument before this Court on October 24, 2006, the parties raised novel points that alter the outcome of this motion. Counsel for Mr. Gross conceded that they would be willing to amend the Complaint to proceed as to only the four (4) properties owned by Herman Gross and Quality Homes. In addition, counsel for Mr. Gross agreed to permit the Trustee to institute and continue adversary proceedings with regard to the remaining properties at issue with an attendant reservation of right to bring claims against the Trustee in those adversary proceedings. Counsel for the Trustee argued that the Complaint was moot to the extent that it sought a determination that the Trustee has no authority to sell certain properties due to the recent auction sale.

The Court will therefore limit its analysis to the four (4) remaining properties owned by Herman Gross and Quality Homes. The status of those properties is as follows. The two Ellis Properties were sold at the Trustee's auction sale, subsequently sanctioned by this Court. Therefore, any aspect of the Adversary Complaint seeking a determination that the Trustee has no authority to sell these properties is moot. Sale of the Seneca Place Property has been stayed pending appeal of this Court's Second Sale Order. Lastly, the Trustee has agreed to forego attempts to sell the

Dennison Road Property for a period of six months from the date of oral argument, in order to provide Herman Gross with an opportunity to seek approval of the pending application for subdivision. Pursuant to this agreement, all parties have reserved their rights to argue the substantive issues contained in the Complaint.

Federal Rule of Civil Procedure 12, made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012, governs on a motion to dismiss. A federal court has a limited role when reviewing the sufficiency of a complaint on a motion to dismiss. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his [or her] claims.'" *Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (quoting *Bermingham v. Sony Corp. of Am.*, 820 F. Supp. 834, 846 (D.N.J. 1992), *aff'd without opinion*, 37 F.3d 1485 (3d Cir. 1994) (other citation omitted)).

A plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted if a defendant demonstrates "'beyond a doubt that [the] plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" *Griesenbeck v. Am. Tobacco Co.*, 897 F. Supp. 815, 819 (D.N.J. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980); *see Craftmatic Sec. Litig. v. Kraftsow (In re Craftmatic Sec. Litig.)*, 890 F.2d 628, 634 (3d Cir. 1989)).

All allegations set forth in the complaint must be accepted as true, and all reasonable inferences must be viewed in the light most favorable to the plaintiff. *See Fagin v. Gilmartin*, 432 F.3d 276, 281 (3d Cir. 2005) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)); *Griesenbeck*, 897 F. Supp. at 819 (citing *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991) (other citation omitted)). On a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court is "limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum." *Griesenbeck*, 897 F. Supp. at 819-20 (citing *Hauptmann v. Wilentz*, 570 F. Supp. 351, 364 (D.N.J. 1983), *aff'd without opinion*, 770 F.2d 1070 (3d Cir. 1985), *cert. denied*, 474 U.S. 1103 (1986) (other citation omitted)). On a motion to dismiss, a court may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994) (citations omitted).

"In order to grant a 12(b)(6) motion to dismiss, the court must find that [the plaintiff] will be unable to prevail even if [he or she proves] all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint." *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000) (citation omitted); *see Syncsort*, 50 F. Supp. 2d at 325 (citing *Conley*, 355 U.S. at 45-46) (other citations omitted).

The threshold issue before the Court is whether the properties constitute property of the NJAH bankruptcy estate. This issue has already been considered and decided by this Court.

> The Court agrees with the Trustee's conclusion that based upon the unique facts and circumstances of the fraud perpetrated by NJAH and Puff, the mere fact that title to a property is in the name of an investor does not mean that NJAH does not have an equitable interest in the property, however speculative that interest may be. [I]n the typical transaction, title to the properties [was] placed in the name of investors (sometimes, it is alleged, through forgery of deeds and mortgages) while NJAH maintained *de facto* ownership and control over the properties as an element of the overall fraudulent scheme. Moreover, NJAH or one of its affiliated entities provided the investors with the funds to purchase the properties, then paid the regular mortgage payments to the various Institutional Lenders, along with the real estate taxes and carrying costs. Indeed, the Bankruptcy

> Code 'is not concerned with the 'technicalities of title' when it comes to determining property of the estate.' *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 870 (Bankr. C.D. Ill. 2005) (citing *see Diviney v. NationsBank of Tex. (In re Diviney)*, 211 B.R. 951, 963 (Bankr. N.D. Okla. 1997), *aff'd*, 225 B.R. 762 (B.A.P. 10th Cir. 1998)). Thus, although bare legal title to the disputed properties is in the name of people other than NJAH, under the peculiar facts of this case NJAH has, at the very least, an equitable interest in the properties sufficient to make the real estate property of the bankruptcy estate under § 541 of the Bankruptcy Code. *Compare In re Clarke*, 332 B.R. at 870.

*Opinion on Second Sale Motion*, pp. 18-19.

Therefore, at a minimum, the properties governed by the Second Sale Order constitute property of the bankruptcy estate, based upon NJAH's equitable interest, resulting from its *de facto* ownership and control of those properties. Any part of the Adversary Complaint that seeks a determination on this issue must be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). However, this holding does not prejudice any legal or equitable claims to the Plaintiffs' ownership in those properties.

The issue then becomes whether the Complaint should be dismissed on principles of judicial efficiency. The United States Supreme Court has noted that in the face of ongoing and similar litigation in federal district courts, "though no precise rule has evolved, the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (citing *see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952); *Steelman v. All Continent Corp.*, 301 U.S. 278 (1937); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Delay and expedition will be subject to the control of equity. '[T]he malleable processes of courts of bankruptcy give assurance of a remedy that can be moulded (sic) and adapted to the needs of the occasion.'" *Steelman*, 301 U.S. at 290 (quoting *Brown v. O'Keefe*, 300 U.S. 598, 605 (1937)).

> 'When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest, there must be the same rights asserted and the same relief prayed for. This relief must be founded on the same facts, and the title, or essential basis of the relief sought, must be the same.'

*Haytian Republic*, 154 U.S. 118, 124 (1894) (quoting *Watson v. Jones*, 80 U.S. 679, 715 (1872)).

"[G]enerally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (applying concepts of judicial efficiency to similar proceedings in the same federal court) (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)).

This Court is inclined to agree with the Plaintiffs. Given the Court's holding on the joinder issue, *infra*, the parties to both proceedings would be the same, would represent the same interests, would maintain and assert identical rights, and would pray for the same relief as would be sought herein. Mr. Gross is allegedly the sole owner of the four properties at issue. In addition, Mr. Gross may be unique in that he sought to purchase the properties outright for the purpose of investment and not solely to garnish the return promised by the Debtor and Wayne Puff. This is evidenced by his payment of expenses and continued attempts to develop the property located in Gardiner, New York. Moreover, Mr. Gross is arguably the largest non-institutional investor in the Debtor, having committed $11.8 million dollars. Lastly, no prejudice to the Trustee is shown. The Trustee admits that Plaintiffs are the record owners of the properties at issue. (*Letter Brief in Reply to the Plaintiffs' Opposition to the Trustee's Motion to Dismiss the Adversary Complaint*, p. 1 n.1). In addition, the Trustee is free to assert any and all claims in the instant adversary proceeding as to the four (4)

properties at issue. Therefore, this Court will permit Mr. Gross and Quality Homes to continue this adversary proceeding as to those four (4) properties.

Dismissal of an adversary proceeding for failure to join an indispensable party is governed by Federal Rule of Civil Procedure 19, made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7019. *See* FED. R. CIV. P. 12(b)(7).

> (a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.
>
> . . .
>
> (b) If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(a) and (b).

Rule 19 clearly establishes a two-prong test for compulsory joinder. First, the Court must determine whether an entity is necessary, as enumerated in Rule 19(a). Second, the Court must determine whether the entity can be made a party. If not, the Court must decide whether the proceeding may continue, or in the alternative be dismissed, using the factor analysis enumerated in Rule 19(b).

At oral argument, counsel for Herman Gross conceded that certain properties made part of the original motion are the subject of interests by lenders or nominal title holders, or both. It is clear that both of these groups are necessary parties as defined by Federal Rule of Civil Procedure 19(a)(2)(i), as any continuation of this proceeding without their knowledge or input would render them unable to defend any claims they have to the four properties at issue.

Moreover, all of the nominal title holders and lenders can be made parties to the instant adversary proceeding. *See* FED. R. CIV. P. 19(b). Federal Rule of Bankruptcy Procedure 7004(d) provides for nationwide service of process of a summons and an adversary complaint and the Trustee argues that all entities necessary to this adversary proceeding can be joined. (*Application in Support of Motion of Charles M. Forman, Chapter 7 Trustee, to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(7) and 12(b)(6), and in the Interest of Judicial Economy*, pp. 16-17). The Plaintiffs do not contest this point other than to assert that these parties are dispensable. Therefore, this Court holds that the adversary complaint be amended to include all parties in interest, including all nominal title holders and lenders that possess or may assert an interest in the four properties at issue.

For the reasons set forth above, this Court: (i) holds that NJAH maintains at least an equitable interest in the properties at issue, making them part of the bankruptcy estate; (ii) hereby dismisses, without prejudice, the Adversary Complaint as it relates to the nineteen (19) properties allegedly owned by H&W and the 42 22nd Street, Irvington, New Jersey property purportedly owned by Quality Homes Development Corp. so that the claims against these properties can be addressed in adversary complaints brought by the Trustee on a property-specific basis; (iii) denies dismissal of the Adversary Complaint with regard to the remaining four (4) properties owned by Herman Gross or Quality Homes, or both; and (iv) directs that an amended complaint be filed within twenty (20) days, incorporating these holdings and joining all indispensable parties as set forth herein.

These holdings in no way affect the Trustee's ability to file claims in the instant adversary proceeding, or the Plaintiffs' assertion of their claims on a property-specific basis in the Trustee's adversary proceedings.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

*/s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: March 28, 2007